71650. STANFORD v. OTTO NIEDERER & SONS, INC.
(341 SE2d 892)

DEEN, Presiding Judge.

Otto Niederer & Sons, Inc., d/b/a Egomatic, brought suit against James D. Stanford, d/b/a Southeastern Agri-Systems, Inc., alleging that Stanford, while acting as their agent, received payment for equipment it owned and sold to a company in North Carolina. Stanford was to deduct his commission from the payment and wire the remainder of $164,991.91 to its New Jersey bank. Instead of following its directions, Stanford converted the funds to his own purposes and refused to pay Niederer the amount it was due. The complaint was amended to add Southeastern Agri-Systems, Inc. as a defendant. Stanford answered, denying the allegations contained in the complaint and counterclaimed, seeking $58,000 as commission for the sale of an egg processing system to Cargill Egg Company. Following a jury trial Niederer was awarded a judgment against Stanford individually in the amount of $200,641.52, $100,000 in punitive damages and $4,250 in attorney fees. No judgment was taken against Southeastern and the defendants were awarded nothing on their counterclaim. This appeal follows the denial of Stanford's motions for a judgment notwithstanding the verdict and for a new trial.

1. In his first three enumerations of error, Stanford contends that the trial court erred in failing to grant his motion for a directed verdict as to his personal liability and as to the issues of conversion and fraud and deceit. The main thrust of Stanford's argument is that Niederer employed Southeastern as its agent and that he was a mere employee of the corporation and owed no duty of any kind to Niederer. The evidence, however, showed that Stanford owned 98% of the stock in the corporation (his wife and accountant owned the remaining 2%), and that he was the president and sole employee of the corporation. From this evidence it is clear that Stanford was a subagent

of his corporation. "[W]here the agent is authorized to appoint a sub-agent, the relation of principal and agent exists between the principal and the subagent. That is, the subagent may be the agent of the principal if he is in actual control of the business and the principal knows of his appointment, or knows that his appointment is necessary, and the agent has authority to employ him." 3 AmJur2d, § 7, p. 423. "[W]here an agent has authority to employ a subagent to receive money for the principal, the principal may treat the subagent as his agent, and when the subagent has received the money, may recover it in an action for money had and received." Id. § 154, p. 545. In the instant case, all the requirements for a subagent being the agent of the principal are satisfied. As a part of the agency contract, " 'the agent agrees to have and exercise towards his principal, diligence, loy-alty, and absolute good faith. [Cit.]' " *Clyde Chester Realty Co. v. Stansell*, 151 Ga. App. 357, 359 (259 SE2d 639) (1979); *Anderson v. Redwal Music Co.*, 122 Ga. App. 247 (176 SE2d 645) (1970). An agent is also under a duty to obey his principal's instruction. *Fort Valley Coca-Cola &c. v. Lumbermen's Mut. Cas. Co.*, 69 Ga. App. 120 (24 SE2d 846) (1943). An agent is bound by restrictions placed upon the use of money entrusted to him by his principal. *Blyth v. White*, 49 Ga. App. 738 (176 SE 830) (1934). Accordingly, we find that the trial court did not err in denying Stanford's motion for a directed verdict as a jury could find him individually liable as an agent of Niederer.

The evidence in this case supported a jury resolution of the issue of conversion and fraud and deceit. To establish conversion the plain-tiff was required to prove that Stanford wrongfully asserted an act of dominion over its personal property which was a denial of its prop-erty rights or was inconsistent with them. *Pelletier v. Schultz*, 157 Ga. App. 64 (276 SE2d 118) (1981). The evidence showed that Nied-erer instructed Stanford to take control of the proceeds of the sale, deduct his commission and forward the balance to its bank in New Jersey. Instead, Stanford admits sending the sale proceeds to South-eastern's bank in Rockdale County and then opening a new account in Metter, Georgia, and forwarding the funds to that account. Stan-ford admitted that at least $100,000 of the funds he deposited in these accounts was Niederer's property and that he used these funds to pay both his own personal debts and certain outstanding debts of the corporation of which he was the guaranty, to pay himself a salary while employed in an individual capacity by a competitor of Niederer and to pay travel expenses, attorney fees, and medical insurance pre-miums. He testified that there was approximately $36,000 remaining in the Metter account. As to the fraud and deceit issue, we note that fraud is not always perpetrated by wilful misrepresentations. By its very nature, it is subtle and can be accomplished in an infinite num-ber of ways including signs and tricks and even, in some instances, by

silence. *Sapp v. ABC Credit Investment Co.*, 243 Ga. 151, 157 (253 SE2d 82) (1979); *Bagley v. Firestone Tire &c. Co.*, 104 Ga. App. 736 (123 SE2d 179) (1961). Stanford maintains that he remained silent after Niederer instructed him to wire the funds to its bank, as he did not intend to commit himself to comply with the request. As stated above, this choice was not Stanford's to make; as Niederer's agent he had a duty to follow his principal's instruction. A jury could find that by remaining silent, Stanford intended to mislead his principal into thinking that he would follow his instructions. A jury could further find that all the remaining elements of fraud were also proved as there was evidence that Niederer relied upon appellant's silence as acquiescence to its instructions and that, as a result of this reliance, suffered damages as a proximate result of this silence. See *Tolar Constr. Co. v. GAF Corp.*, 154 Ga. App. 127 (267 SE2d 635) (1980); *Sapp v. ABC Credit Investment Co.*, supra.

2. Appellant next claims that the court below erred in charging the jury that constructive fraud would support an action for fraud and deceit. The jury charge tracked the provisions of OCGA § 23-2-51 (a) and (b) which define actual fraud and constructive fraud, but did not include subsection (c) which states: "Actual fraud implies moral guilt; constructive fraud may be consistent with innocence." Appellant argues the court erred under the holding in *Irvin v. Lowe's of Gainesville*, 165 Ga. App. 828 (302 SE2d 734) (1983), by charging on constructive fraud because it exists only as an equitable doctrine and will not support an action for damages. "In order to give rise to an action for damages, the defendant's fraud must be actual, i.e. the misrepresentation must be made either knowingly or with reckless disregard for the consequences." Id. at 830. In the instant case, the court charged the parties' contentions and stated that Niederer contended that Stanford "defrauded the plaintiff by the sale of equipment without intending to pay for it and he along with his company are jointly and severally liable for fraud." Thus, the plaintiff's only contention was actual fraud and any mention of constructive fraud was harmless error and could not mislead the jury. The sage words of Judge Bleckley, which were written over a hundred years ago, which also charted our course and served as a road map on many occasions, are again appropriate: "Wrong directions which do not put the traveller out of his way, furnish no reason for repeating the journey." *Cherry v. Davis*, 59 Ga. 454, 457 (1877).

3. Appellant erroneously contends that the trial court erred in failing and refusing to charge the jury on the elements of actual fraud as requested. The fraud charge may be found on page 240 of the transcript. The charge given was a correct statement of the law. It is not necessary to charge in the exact language of a request to charge where applicable principles are covered in the general charge of the court.

*Kirby v. State*, 174 Ga. App. 58 (329 SE2d 228) (1985).

4. Appellant's sixth enumeration contending the court erred in its charge on punitive damages will not be considered as no objection to this charge was raised in the court below. *Pettus v. Smith*, 174 Ga. App. 587 (330 SE2d 735) (1985).

5. There is no inconsistency in a jury verdict which finds against one defendant in his individual capacity and in favor of his employer, a corporate defendant. The verdict was supported by a preponderance of the evidence which found that Stanford alone violated his fiduciary duty to his principal.

*Judgment affirmed. Benham and Beasley, JJ., concur.*

DECIDED FEBRUARY 12, 1986 —
REHEARING DENIED FEBRUARY 27, 1986 —

*John A. Gilleland, John A. Nix*, for appellant.
*William G. Gainer*, for appellee.